**Robert L. GAZLAY, Plaintiff,**

v.

**James B. BUSEY, Defendant.**

### Civ. A. No. 91–2438.

United States District Court, District of Columbia.

April 6, 1993.

Eugene R. Fidell, Feldesman, Tucker, Leifer, Fidell & Bank, Washington, DC, for plaintiff.

John R. Munich, Asst. U.S. Atty., Washington, DC, for defendant; Paul M. Geier, Asst. Gen. Counsel for Litigation, Dale C. Andrews, Deputy Asst. Gen. Counsel for Litigation, Peter J. Plocki, Trial Atty., U.S. Dept. of Transp., of counsel.

### OPINION

HAROLD H. GREENE, District Judge.

I

Robert Gazlay, an officer of the United States Coast Guard, was passed over for promotion to commander in 1989 and 1990. The selection board decided not to promote Gazlay on the basis of several less than outstanding Officer Evaluation Reports ("OER's") filed by Gazlay's supervisor, Captain John R. Sproat. However, upon learning that Gazlay was not promoted, Captain Sproat reevaluated his original OERs, determined that they were incorrect, and wrote Coast Guard Headquarters requesting that the first OERs be expunged from plaintiff's record and be replaced with a second set of OERs. The second group of OERs gave Gazlay a much higher performance rating and expressly recommended promotion. In his letter, Sproat explained that he misunderstood the OER system and the impact that some of his comments would have upon Gazlay's performance opportunities. He emphasized that a promotion to commander was "clearly deserved."

Gazlay applied for relief to the Coast Guard Personnel Records Review Board. The Board refused to expunge the old OERs. An appeal was taken to the Board of Correction of Military Records ("BCMR") which reversed the Review Board. Specifically, the BCMR ruled that the revised OERs should be placed in Gazlay's military record, that all reference to the first set of OERs and the earlier denials of promotion be deleted and that he be promoted to commander backdated to 1989.

As required, this Final Decision ("Final Decision I") was forwarded to the Office of General Counsel of the department for review.[1] An Assistant General Counsel reviewed the decision and returned it to the BCMR. On July 26, 1991, more than 10 months after the submission of plaintiff's application, the BCMR issued a second Final Decision ("Final Decision II"). In Final Decision II, the BCMR reversed itself and left the original OERs and reference to the two earlier passovers in Gazlay's file. The promotion was left intact but was not backdated. The reversal was based not upon any regulation but upon an aversion to setting a precedent permitting changes to personnel records.[2]

Commander Gazlay seeks to have Final Decision II overturned and Final Decision I reinstated. The Court agrees that Final Decision I fixed the rights of Commander Gazlay and could not be varied by a second final decision issued over ten months later.

## II

In an effort to ensure that applications for corrections of military records are handled expeditiously, Congress passed legislation re-

quiring BCMR decisions to be completed within 10 months of submission of an application. Coast Guard Authorization Act of 1989, § 212, Pub.L. 101–225, 103 Stat.1914. The BCMR's inability to act upon applications within a reasonable time and quickly enough to afford plaintiffs relief was brought to Congress' attention by the *Moore* settlement. *See Moore v. Board of Correction for Military Records*, Stipulation of Settlement and Dismissal, Civ. No. 87–2689 (D.D.C. filed April 29, 1988).

In *Moore*, a group of plaintiffs sued claiming that the BCMR's failure to decide applications expeditiously violated the Administrative Procedures Act. In settling the case, the Coast Guard agreed to take measures to ensure was expeditious resolution of applications. Congress noticed the case and in response passed section 212 with its ten month time limit. *See* Letter from Walter B. Jones, Chairman, and Robert W. Davis, Ranking Minority Member, Committee on Merchant Marine and Fisheries, to the Coast Guard, (May 30, 1990) ("We first became aware of the problems with the BCMR when a group of past and present Coast Guard personnel sued the BCMR over delays in processing applications for relief."). Furthermore, when it became apparent that the regulations being promulgated by the Coast Guard to implement the ten month rule would result in review of application taking longer than ten months, Congress insisted that the regulations be revised to ensure action on applications within the statutory time period. *Id.* Congress was clear. It enacted section 212 to end the delay, and it expected the time limits to be respected. *See* H.R.Rep. No.

---

1. BCMR decisions which are adverse to an applicant are final without further action of the Secretary. 33 C.F.R. § 52.35–15(b) (1990); 33 C.F.R. § 52.64(a)(1) (1991). BCMR decisions recommending relief are forwarded to the Deputy General Counsel for approval, disapproval, or return to the BCMR for additional consideration. 33 C.F.R. § 52.35–15(b) (1990); 33 C.F.R. § 52.-64(b) (1991). In the instant action Final Action I was forwarded not to the Deputy General Counsel but to an Assistant General Counsel. This Opinion does not decide whether authority to review the decision was properly delegated to the Assistant General Counsel.

2. No regulation barred the action requested by plaintiff. Instead, the Final Decision II was premised only on an aversion to permitting changes to personnel records for fear of a deluge of such requests. To deny relief to a deserving plaintiff merely out of fear that other plaintiffs, with both meritorious and unmeritorious claims, will petition the BCMR is an arbitrary decision. The Court is puzzled regarding the function of the BCMR if not to give meaningful review of applications and relief when warranted. There is little purpose in having a review board prohibited from giving relief in such circumstances.

227, 101st Cong., 1st Sess. 32–33, U.S.Code Cong. & Admin.News 1989, 1368, 1393–1394.

The Coast Guard concedes that Congress established a ten month deadline to reduce delay but argues that this statutory deadline is not mandatory. According to the defendants, "a statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision." *St. Regis Mohawk Tribe v. Brock,* 769 F.2d 37, 41 (2d Cir.1985). Here, Congress failed to indicate the consequence of failing to act within the ten month period. Accordingly, defendants assert, the delay associated with responding to Commander Gazlay's application is irrelevant.

Defendants give only a partial reading of the case law. Most importantly, the Supreme Court in *Brock v. Pierce County,* 476 U.S. 253, 262, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986) noted that while the general rule is that a statutory deadline "standing alone, is not enough to remove" the agency's power to act after the deadline, that result is not required in all such instances. The Court explained that

> [w]e need not, and do not, hold that a statutory deadline for agency action can never bar later action unless the consequence is stated explicitly in the statute.

*Id.* at 262 n. 9, 106 S.Ct. at 1840 n. 9. The Court indicated that the question ultimately is one of congressional intent. Indeed, the *St. Regis* court goes on to point out that a deadline is not mandatory "in the absence of persuasive extrinsic evidence" that Congress intended it to be binding. In the view of this Court, such "persuasive extrinsic evidence" is found in this case.

In *Pierce County,* the legislative history demonstrated that Congress did not intend the deadline in that case to take from the Secretary power to act after passage of the deadline. *Id.* at 263, 106 S.Ct. at 1840. Similarly in *St. Regis Mohawk Tribe,* the Court was able to point to an exchange on the House floor demonstrating that the deadline was not intended to preclude the agency from acting after the time had passed.

In contrast to the deadlines in both *Pierce County* and *St. Regis Mohawk Tribe,* here Congress clearly intended to set a mandatory deadline for agency action. The deadline was not merely a minor piece of a larger integrated Act. Section 212 of the Authorization Act was a narrowly targeted piece of legislation passed for the sole purpose of ending Coast Guard BCMR delays. *See* H.R.Rep. No. 227, 101st Cong., 1st Sess. 32–33, U.S.Code Cong. & Admin.News 1989, 1393, 1394. Nor was this generic legislation. No such deadline is imposed on the review boards of other agencies such as the Army or Navy. As the House Report makes apparently clear, in enacting section 212 Congress wished to end the long delays accompanying action by the Coast Guard BCMR. In light of the legislative history, it cannot be disputed that Congress intended the ten month limit to be a mandatory deadline.

The instant case is distinguishable from *St. Regis Mohawk Tribe* and *Pierce County* in another important respect. Here the Coast Guard BCMR actually issued a Final Decision within the statutorily-required period. Certainly when the BCMR resolves the application within the Congressionally-mandated window, the decision should be found to be a final decision. Beyond the ten-month period, the agency was without authority to take further action.[3] The BCMR cannot at its leisure, and contrary to congressional intent, revisit that decision. The Court holds that the first Final Decision is the decision of the agency in this case.

For the reasons stated, the Court grants plaintiff's motion for summary judgment and orders that the first Final Decision be reinstated and that prompt compliance be had with its provisions.

---

**3.** The Assistant General Counsel's review was also defective because Gazlay was not afforded any opportunity to examine and make a submission in light of the lower body's determination.

*See Koniag, Inc., Village of Uyak v. Andrus,* 580 F.2d 601, 609 (D.C.Cir.1978). In fact, Gazlay was not even notified of the first Final Decision.