Hyman G. GOTTLIEB, Appellee,

v.

Federico F. PEÑA, Secretary of Transportation, Appellant.

Robert L. GAZLAY, Appellee,

v.

Federico F. PEÑA, Secretary of Transportation, Appellant.

Nos. 93–5182, 93–5183.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1994.

Decided Dec. 6, 1994.

R. Craig Lawrence, Asst. U.S. Atty., Washington, DC, argued the cause for appellant. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., John D. Bates and Thomas S. Rees, Asst. U.S. Attys., Paul M. Geier, Asst. Gen. Counsel, Dale C. Andrews, Deputy Asst. Gen. Counsel, and Peter M. Plocki, Atty., U.S. Dept. of Transp., Washington, DC.

Eugene R. Fidell, Washington, DC, argued the cause and filed the brief for appellees.

Before: SILBERMAN, BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

■ The principal issue in these appeals is whether the statutory ten-month period for final action on applications for correction of Coast Guard records is directory or mandatory.[1] The Secretary of Transportation appeals from the grants of summary judgment to appellees Hyman G. Gottlieb and Robert L. Gazlay, on the ground that the district courts disregarded well-settled law in ruling that the statutory period was mandatory and divested the Secretary of authority to act after its expiration. The Secretary thus maintains the district courts erred in concluding that upon the expiration of the statutory period, the recommended decisions of the Coast Guard Board for the Correction of Military Records, which would usually require the Secretary's approval, automatically became the final agency decisions. The Secretary also contends that the district court erred in ruling that Gazlay was denied due process when he was not afforded the opportunity to examine and respond to the Board's recommended decision that was forwarded to the Secretary for approval. We hold that the ten-month period is directory and that Gazlay was not denied due process. Accordingly, we reverse.

## I.

From 1987 through 1989, Gazlay was a lieutenant commander in the Coast Guard under the supervision of Commander J.R. Sproat. Sproat filed two Officer Evaluation

1. Section 212 of the Coast Guard Authorization Act of 1989, Pub.L. 101–225, 103 Stat. 1908, 1914 (1989) (codified at 10 U.S.C. § 1552 note (Supp. V 1993)), provides:

Not later than 6 months after the date of the enactment of this Act, the Secretary of Transportation shall—
(1) amend part 52 of title 33, Code of Federal Regulations, governing the proceedings of the board established by the Secretary under

section 1552 of title 10, United States Code, to ensure that a complete application for correction of military records is processed expeditiously and that final action on the application is taken within 10 months of its receipt; and
(2) appoint and maintain a permanent staff, and a panel of civilian officers or employees to serve as members of the board, which are adequate to ensure compliance with paragraph (1) of this subsection.

Reports on Gazlay, giving him high but not exceptional marks. Gazlay was passed over for promotion to commander in 1989 and 1990. In 1989, Sproat informed his superior that his evaluation reports were invalid and submitted replacement reports that were more complimentary to Gazlay. On May 23, 1990, Gazlay filed an application requesting the Board for Correction of Military Records to authorize the replacement of the earlier reports. The Board agreed that Gazlay was entitled to substantially the relief he requested, and, on March 13, 1991, forwarded its recommendation to the Secretary of Transportation for approval.[2] After receiving the Secretary's disapproving comments, the Board issued a decision, dated July 26, 1991, denying Gazlay's application but providing that the replacement reports would be added to his file.

Gazlay filed suit against the Secretary, requesting the relief specified in the Board's initial recommended decision. The district court granted Gazlay's motion for summary judgment on the ground that the Secretary lacks statutory authority to act after the expiration of ten months, and, therefore, when the Board acts within ten months, its recommended decision becomes the final agency decision once ten months have passed, regardless of subsequent action by the Secretary. *Gazlay v. Busey*, 819 F.Supp. 29, 31 (D.D.C.1993). The district court also ruled that the Board's decision of July 26, 1991, was invalid because Gazlay was not given notice of, nor permitted to comment upon, the Board's initial recommended decision. *Id.* at 31 n. 3.

Gottlieb, in turn, benefitted from the district court's opinion in Gazlay's case. Gottlieb entered the Coast Guard in 1919 and attained the permanent grade of chief pay clerk. He received temporary appointments as lieutenant and lieutenant commander, but later reverted to the rank of chief pay clerk. In 1947 he retired due to a disability. A retirement board found that the highest rank of service in which Gottlieb performed satis-

factorily was chief pay clerk. Gottlieb petitioned the Board to correct his records to reflect his service as a lieutenant commander. In 1949, the Board granted part of the requested relief by changing his record to reflect the rank of lieutenant. Gottlieb's requests for reconsideration in 1949, 1950, 1961, and 1962 were unavailing. On July 31, 1990, Gottlieb again requested reconsideration, and on August 6, 1991, the Board forwarded to the Secretary for approval its recommended decision that the 1949 ruling was erroneous and that Gottlieb should be restored to the rank of retired lieutenant commander, retroactive to 1947. After the Secretary disapproved the Board's recommended decision and denied Gottlieb's request for reconsideration, Gottlieb filed suit against the Secretary. Relying on *Gazlay v. Busey*, 819 F.Supp. 29, the district court granted Gottlieb's motion for summary judgment.

## II.

The Secretary appeals from the judgments for appellees on the ground that the law is clear that the ten-month deadline must be viewed as directory where a remedy to compel agency action already exists and Congress has not expressly indicated the consequences of missing the deadline. It follows, he argues, that the district courts erred in ruling that the Board's recommended decision was the final agency decision. Appellees respond that although a congressional deadline, standing alone, does not necessarily divest an agency of power to act after the deadline has passed, the mandatory nature of the ten-month period is clear from its language, context, and legislative history, and that the appropriate remedy for its violation is for the Board's recommended decision to become final. The court reviews the grant of summary judgment *de novo. Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994); *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C.Cir.1994).

---

2. To the extent that the Secretary has not authorized the Board to exercise final authority, *see* 33 C.F.R. 52.64 (1993), the Secretary has delegated the authority to approve or disapprove the Board's recommended decisions to the Deputy General Counsel. 49 C.F.R. 1.57(e) (1993). For purposes of these appeals, we refer to the Secretary as the final decision maker under the statute.

Under 10 U.S.C. § 1552(a)(1) (Supp. V 1993), the Secretary is authorized to correct Coast Guard military records. Corrections are to be made pursuant to procedures established by the Secretary. *Id.* § 1552(a)(3). By regulation, the Secretary established the Board to make final decisions in some areas and recommended decisions in others. 33 C.F.R. § 52.35–15 (1990); *id.* § 52.64 (1991). The Secretary authorized the Board to take final action when the Board unanimously denies applications for correction of Coast Guard records. *Id.* § 52.35–15(a)(1) (1990); *id.* § 52.64(a)(1) (1991). In limited circumstances not relevant here, the Board may also grant affirmative relief. *See id.* § 52.35–15(a)(2)–(3) (1990); *id.* § 52.64(a)(2)–(3) (1991). In all other circumstances, the Board must "forward the record of its proceedings to the Secretary for approval, disapproval, or return for additional consideration." *Id.* § 52.35–15(b) (1990); *id.* § 52.64(b) (1991).

Section 212 of the Coast Guard Authorization Act of 1989 directed the Secretary to amend the regulations governing the Board's procedures "to ensure . . . that final action on the application is taken within 10 months of its receipt."[3] Section 212 also directed the Secretary to provide the Board with sufficient staff to ensure compliance with the ten-month period. *Id.* Thereafter, the Secretary promulgated a regulation providing that "[f]inal action on an application for correction of a military record shall be taken within 10 months after all the elements of a complete application . . . have been received by the Board." 33 C.F.R. § 52.68 (1991).

It is well settled, as the Secretary argues in his brief, that "where Congress has placed an agency under a legal obligation to render a decision within a stated time period but has not set forth the consequences of exceeding that period, ordinarily the time period is directory rather than mandatory, and an agency will not lose jurisdiction over the matter upon expiration of that period." The Supreme Court's decision in *Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), is both illustrative and instructive. In *Brock,* the Supreme Court held that a 120–day time limit for the Secretary of Labor to issue a final determination concerning alleged misuse of funds under the Comprehensive Employment and Training Act was not jurisdictional. *Id.* at 255–56, 266, 106 S.Ct. at 1836–37, 1842. The Court applied the general rule that "[w]hen . . . there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." *Id.* at 260, 106 S.Ct. at 1839 (footnote omitted). The Court then concluded that the use of the word "shall" in the statute was insufficient, by itself, to divest the Secretary of jurisdiction at the expiration of the time limit. *Id.* at 262, 106 S.Ct. at 1840. Turning to the legislative history, the Court noted a colloquy on the House floor indicating that at least one of the bill's sponsors believed that the deadline was not jurisdictional. *Id.* at 263, 106 S.Ct. at 1840–41. Moreover, the history of the statute indicated that Congress was concerned about fraud in the program and wanted to ensure prompt and just resolution of fraud claims. The Court concluded that a time limit that cut off the Secretary's jurisdiction would not serve these purposes, *id.* at 265, 106 S.Ct. at 1841–42, noting that "[t]here is simply no indication in the statute or its legislative history that Congress intended to remove the Secretary's enforcement powers if he fails to issue a final determination . . . within 120 days." *Id.* at 265–66, 106 S.Ct. at 1842. We apply this analysis here.

First, Congress did not specify in § 212 any consequences for missing the ten-month deadline; neither the statute imposing the deadline nor the implementing regulations suggest that failure to comply with the deadline would diminish the authority of the Secretary. Unlike the usual statute of limitations which governs the filing of a complaint, § 212 requires resolution of the entire dispute within the limitation period. This resolution "is a more substantial task than filing a complaint, and the Secretary's ability to complete it within [ten months] is subject to factors beyond his control. There is less reason, therefore, to believe that Congress intended such drastic consequences to follow

**3.** *See supra* note 1.

from the Secretary's failure to meet the [ten-month] deadline." *Brock v. Pierce County,* 476 U.S. at 261, 106 S.Ct. at 1839–40.

Congressional intent that the ten-month deadline be directory rather than mandatory is suggested as well by the fact that the language used in § 212 has been used elsewhere by Congress when it is clear that no sanction for noncompliance was intended.[4] Indeed, even when Congress has employed stronger language, this court has repeatedly concluded that missing a statutory deadline does not divest an agency of authority over a case or issue. *See Linemaster Switch Corp. v. EPA,* 938 F.2d 1299, 1302–04 (D.C.Cir. 1991); *In re Barr Laboratories, Inc.,* 930 F.2d 72, 74 (D.C.Cir.) (collecting cases), *cert. denied,* — U.S. —, —, 112 S.Ct. 297, 298, 116 L.Ed.2d 241 (1991). Instead, in general, the proper recourse for a party aggrieved by delay that violates a statutory deadline is to apply for a court order compelling agency action. *In re Barr,* 930 F.2d at 74–75 (citing *Forth Worth Nat'l Corp. v. FSLIC,* 469 F.2d 47, 58 (5th Cir.1972), and *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 80 (D.C.Cir.1984) (identifying six principles for determining whether mandamus is an appropriate remedy for agency delay)); *see also Brock v. Pierce County,* 476 U.S. at 260 n. 7, 106 S.Ct. at 1839 n. 7. The Supreme Court recently reaffirmed that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *United States v. James Daniel Good Real Property,* — U.S. —, —, 114 S.Ct. 492, 506, 126 L.Ed.2d 490

(1993); *see General Motors Corp. v. United States,* 496 U.S. 530, 542, 110 S.Ct. 2528, 2534, 110 L.Ed.2d 480 (1990); *United States v. Montalvo-Murillo,* 495 U.S. 711, 718, 110 S.Ct. 2072, 2077–78, 109 L.Ed.2d 720 (1990). Of course, one reason for these decisions is the recognition that Congress is fully able to specify the consequence of an agency's failure to abide by a statutory deadline when it chooses to do so. *See Central Bank of Denver v. First Interstate Bank of Denver,* — U.S. —, —, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994); *cf. General Motors,* 496 U.S. at 541, 110 S.Ct. at 2534.[5]

Second, the legislative history on which the district courts rely to find a mandatory time period divesting the Secretary of authority to act is unpersuasive. The district courts were aware of the well-settled law against assuming that Congress intended an agency to lose its power to act, but concluded that appellees' cases fell within an exception under which a statutory deadline for agency action can bar later action even though the consequence is not stated in the statute. *Gazlay v. Busey,* 819 F.Supp. at 31. In *Gazlay v. Busey,* the district court relied on language in *Brock v. Pierce County,* 476 U.S. at 262 n. 9, 106 S.Ct. at 1840 n. 9, where the Supreme Court stated that "[w]e need not, and do not, hold that a statutory deadline for agency action can never bar later action unless that consequence is stated explicitly in the statute." Viewing this question as "ultimately one of congressional intent," *Gazlay v. Busey,* 819 F.Supp. at 31, the district court concluded that there was " 'persuasive extrinsic evidence' that Congress intended [the deadline] to be binding,"

---

**4.** *See, e.g.,* 12 U.S.C. § 1701r–1(b)(1) (1988) ("Not later than the expiration of the twelve-month period following November 30, 1983, the Secretary of Housing and Urban Development and the Secretary of Agriculture shall each issue such regulations as may be necessary to ensure ... attaining the goal of providing decent, safe, and sanitary housing for the elderly or handicapped."); 49 U.S.C. app. § 1374 note (1988) ("Within one hundred and twenty days after the date of enactment of this Act, the Secretary of Transportation shall promulgate regulations to ensure non-discriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers.").

**5.** Many statutes do specify such consequences. *See, e.g.,* 25 U.S.C. § 2710(e) (1988) (if Chairman

of the National Indian Gaming Commission fails to act on a request for approval of a tribal gaming ordinance within 90 days of its submission, the ordinance "shall be considered to have been approved"); *id.* § 2710(d)(8)(C) (if Secretary fails to disapprove state-tribal compact within 45 days, "the compact shall be considered to have been approved"); *see also* 15 U.S.C. § 3416(a)(2) (1988) (failure to act timely treated as denial of application); 16 U.S.C. § 544e(b)(3)(A) & (C) (1988) (failure to act timely treated as approval of submitted ordinance); 22 U.S.C. § 4113(f)(3) (1988) (same, regarding agreement); 42 U.S.C. 1396n(h) (1988) (same, regarding request).

and therefore to divest the Secretary of authority to act. *Id.* (quoting *St. Regis Mohawk Tribe v. Brock,* 769 F.2d 37, 42 (2d Cir.1985)).

The district court pointed to the fact that § 212 was enacted following a stipulated settlement in *Moore v. Board for Correction of Military Records of the Coast Guard,* Civ. No. 87–2689 (D.D.C. April 29, 1988), in which the Coast Guard agreed to take measures to ensure expedited resolution of applications. *Gazlay v. Busey,* 819 F.Supp. at 30. Congress was aware that some applications in *Moore* had been pending before the Board for more than two years. H.R.REP. NO. 227, 101st Cong., 1st Sess. 32–33 (1989), U.S.CODE CONG. & ADMIN.NEWS, pp. 1368, 1393, 1394. The district court relied on the fact that Congress had insisted that the Secretary revise the regulations to ensure action on applications within the statutory time period and concluded, therefore, that by enacting § 212, Congress intended "to end the delay [and] expected the time limits to be respected." *Gazlay v. Busey,* 819 F.Supp. at 30.

We agree with the district court that there is strong evidence that Congress was concerned about the lengthy delays in processing Coast Guard applications. Section 212 was, as the district court noted, targeted specifically to the Coast Guard, to the exclusion of all other services. *Id.* at 31. The legislative history makes clear that Congress viewed timely determinations by the Board as important in preventing the unjust premature ending of Coast Guard careers.[6]

But it is clear as well that Congress' ultimate concern was that appropriate relief be provided. Both of § 212's directives—to assure adequate staffing for processing applications and to render decisions within ten months—were undoubtedly designed "to spur the Secretary to action, not to limit the scope of his authority." *Brock v. Pierce County,* 476 U.S. at 265, 106 S.Ct. at 1841. For despite being advised of delays and their attendant problems, Congress did not amend the statute placing the final decision on applications for the correction of Coast Guard records in the Secretary. Nor did it state in the legislative history that it intended for the Board's recommended decision to become the Secretary's final decision upon expiration of the ten-month period.[7]

The record suggests at least one salient reason why Congress avoided mandating such a result. The Secretary advised Congress that some flexibility in timing was required to ensure the just and fair handling of cases. *See* Report of the Department of Transportation on the Coast Guard Authorization Act of 1993, H.R.REP. NO. 146, 103d Cong., 1st Sess. 28 (1993) ("Some cases simply take longer than others because they involve intricate or difficult legal and factual issues."). Congress could readily appreciate that stripping the Secretary of authority to act after ten months could deny relief to deserving applicants. Under such a regime, if a non-unanimous Board had recommended denial of an application and the Secretary was unable to act because ten months had expired, the applicant would be disadvantaged by a rule making the Board's recommended decision final. Similarly, deeming all applications to be granted after ten

---

**6.** The House Report on the Coast Guard Authorization Act of 1989 states that:

[Lengthy delays] are problematic because Coast Guard members often are not aware that there is a significant problem with their military record until they are passed over for promotion because of it. If a member's appeal is not acted on within a year[,] the officer will likely be passed over for promotion again. In many cases this will mean an end to the officer's Coast Guard career.

H.R.REP. NO. 227, 101st Cong., 1st Sess. 33 (1989), U.S.CODE CONG. & ADMIN.NEWS, p. 1394.

**7.** In the 103d Congress, the House of Representatives passed, but Congress did not enact, a provision explicitly providing that the ten-month period is mandatory and that upon its expiration without action by the Secretary, the Board's recommended decision becomes the final agency decision. *See* § 204(a) of H.R. 2150, a bill to authorize appropriations for fiscal year 1994 for the U.S. Coast Guard, 103d Cong., 1st Sess. (1993), 139 Cong.Rec. H5542 (daily ed. July 30, 1993). Because this provision was not enacted into law, it is impossible to draw any conclusions from it or the House Committee report. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 2371–72 n. 1, 105 L.Ed.2d 132 (1989); *Johnson v. Transportation Agency,* 480 U.S. 616, 671–72, 107 S.Ct. 1442, 1472–73, 94 L.Ed.2d 615 (1987) (Scalia, J., dissenting); *cf. DKT Memorial Fund v. Agency for Int'l Dev.,* 887 F.2d 275, 282 n. 4 (D.C.Cir.1989).

months could result in adverse consequences for the government, including a flood of applications that would clog the system. In view of the complexities likely to be presented in individual cases and the competing interests at stake, Congress understandably required the Secretary to act promptly, but also declined to dictate what would happen if the Secretary failed to do so.

The Supreme Court has considered instances in which Congress had comparably strong reasons for placing similar time limitations on agencies and expecting compliance. *See, e.g., James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492; *General Motors Corp.,* 496 U.S. 530, 110 S.Ct. 2528; *Montalvo–Murillo,* 495 U.S. 711, 110 S.Ct. 2072; *Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834. In each case, however, because Congress failed to specify the consequence of a violation, the Supreme Court refused to enforce a consequence of its own creation. Congress is deemed to act with knowledge of these decisions, *see Conroy v. Aniskoff,* —— U.S. ——, ——, 113 S.Ct. 1562, 1566, 123 L.Ed.2d 229 (1993); *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979), and it was specifically aware that there already existed a remedy for agency delay. *See* H.R.REP. No. 227, 101st Cong., 1st Sess. 32–33 (1989), U.S.CODE CONG. & ADMIN.NEWS pp. 1393, 1394; *Gazlay v. Busey,* 819 F.Supp. at 30. In the instant appeals, neither the statute nor the legislative history addresses the effect of missing the ten-month deadline on the Secretary's authority to act thereafter. Nor do they address the existing regulatory scheme that requires the Board to submit a recommendation for affirmative relief to the Secretary for approval or disapproval. Under these circumstances, the district courts erred in failing to adhere to the general rule that "[w]hen ... there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." *Brock v. Pierce County,* 476 U.S. at 260, 106 S.Ct. at 1839 (footnote omitted).

Even were the legislative history more favorable to appellees' position that Congress intended to strip the Secretary of authority to act after expiration of the ten-month period, the district courts' remedy—making the Board's recommended decisions the agency's final decisions—does not necessarily follow. The statutory and regulatory scheme requires the Secretary to make decisions granting affirmative relief such as appellees requested.[8] The Board's decisions are final decisions only in those areas where the Secretary has delegated such authority to it. *See* 33 C.F.R. 52.64(a) (1993).[9] All of the Board's actions in other areas are recommended decisions for the Secretary's approval and labeled as such in the Board's memorandum of transmittal.[10] Thus, the failure of the Secretary to act timely does not automatically transform the Board's recommended decision into the Secretary's final decision.

**8.** *Miller v. Lehman,* 801 F.2d 492, 497 (D.C.Cir. 1986) ("Though section 1552(a) directs the Secretary to act through a civilian board, it leaves no doubt that the final decision is to be made by him.... [I]n the context of applications for correction of military records [final agency actions] mean ... decisions by the Secretary."). *See also Owings v. Secretary of United States Air Force (Safos),* 447 F.2d 1245, 1252 (D.C.Cir.1971), *cert. denied,* 406 U.S. 926, 92 S.Ct. 1799, 32 L.Ed.2d 128 (1972); *Crager v. United States,* 25 Cl.Ct. 400, 405–06 (1992) (citing *Miller v. Lehman,* 801 F.2d at 497); *Boyd v. United States,* 207 Ct.Cl. 1, 5 n. 2 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

**9.** The cases cited in note 8, *supra,* and this regulation dispose of appellees' contention that 10 U.S.C. § 1552 does not authorize the Secretary to issue a final decision because, under the statute, "corrections shall be made by the Secretary acting through boards of civilians." *See Miller v. Lehman,* 801 F.2d at 497. Furthermore, all other services' Boards have Secretarial oversight. *See* 32 C.F.R. §§ 581.3(f)(2) (Army), 723.7 (Navy), 865.21 (Air Force) (1994).

**10.** The Board's initial proposed decisions in appellees' cases included the heading on the first page: "FINAL DECISION." However, by covering memorandum they were forwarded to the Secretary as "recommended decision[s]" and were undated. On the last page of each decision, a space was designated for the Secretary's signature beneath the word "APPROVED"; adjacent to the line for the Secretary's signature was a line for the date to be added. By contrast, when the Board renders final decisions pursuant to delegated authority from the Secretary, the Board's decision is dated and there is no place for the Secretary's signature.

Consequently, even if Congress intended the ten-month period to be mandatory, Congress has not indicated that the courts should recast this regulatory scheme and convert the Board's limited authority into final authority, when the less drastic remedy of a court order compelling agency action exists. *See In re Barr,* 930 F.2d at 74.

Accordingly, we hold that the district courts erred in interpreting § 212 to impose a deadline beyond which the Board's latest recommended decision becomes the final agency decision.

## III.

■ The Secretary also contends that the district court erred in ruling in Gazlay's case that "[t]he [Secretary's] review was also defective because Gazlay was not afforded any opportunity to examine and make a submission in light of the lower body's determination." *Gazlay v. Busey,* 819 F.Supp. at 31 n. 3. The district court relied exclusively on *Koniag, Inc., Village of Uyak v. Andrus,* 580 F.2d 601 (D.C.Cir.), *cert. denied,* 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978). In *Koniag,* this court drew upon the Administrative Procedures Act ("APA") for persuasive support for the requirement of Native participation at each level of the process under the Alaska Native Claims Settlement Act, which required that its procedures be accomplished "with maximum participation by Natives...." 580 F.2d at 609; *see* 43 U.S.C. § 1601(b). By its own terms, the APA does not apply to applications for the correction of military records because 10 U.S.C. § 1552 does not require that the Board's decisions be made "on the record after an opportunity for an agency hearing." *See* 5 U.S.C. § 554(a). Nor does the APA apply under the reasoning of *Koniag,* be-

cause 10 U.S.C. § 1552 contains no maximum participation clause analogous to that in the Alaska Native Claims Settlement Act.

Gazlay maintains, however, that regardless of the applicability of the APA, the failure of the Secretary to disclose the Board's initial recommended decision and to allow comment on it was a denial of due process in violation of the Fifth Amendment. He relies primarily on *Koniag* and *Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938).[11] His reliance on *Koniag* is misplaced; in that case there were three tiers of review, each representing a distinct step in an administrative policy making or decision making process with no opportunity to comment at two levels. 580 F.2d at 604–05. By contrast, here the two "tiers" really represent one decision maker and his "staff" (i.e., the Board). Therefore, Gazlay is not entitled to input or process past the first "tier" and cannot force the agency to open its essentially deliberative process under the *Morgan* case. *See Morgan v. United States,* 298 U.S. 468, 481, 56 S.Ct. 906, 911–12, 80 L.Ed. 1288 (1936) (noting that "the one who decides must hear," but also contemplating a healthy degree of delegation). Gazlay was provided every opportunity to be advised of the Coast Guard's purpose and to comment upon its submission to the Board. Both the statute and implementing regulations demonstrate that the Board is serving as the Secretary's staff in carrying out responsibilities for the correction of Coast Guard records; "parties have no right to inquire into an agency's mental processes." *Louisiana Ass'n of Indep. Producers v. FERC,* 958 F.2d 1101, 1115 n. 5 (D.C.Cir.1992); *see City of New Haven v. Civil Aeronautics Board,* 618 F.2d 955, 963 n. 11 (2d Cir.1980) (dictum).[12] Finally, had

---

11. The court appreciates the parties' submission of supplemental briefs on the due process issue in response to the court's request.

12. Gazlay's contention that the Board's final decision was arbitrary because it was made solely to avoid establishing a precedent that would result in a flood of applications to the Board is unpersuasive. *See Gazlay v. Busey,* 819 F.Supp. at 30 & n. 2. The record indicates that the Secretary disapproved the Board's initial recommendation in part because of insufficient evidence of a procedural irregularity or factual mis-

take in the original reports. The Board's final decision observed, moreover, that the differences between the original and replacement reports "are a matter of emphasis and personal judgment." The Board noted that the substitution of evaluation reports is not supported by applicable rules or legal principles, and that allowing substitutions could have a negative effect on the integrity of the ratings process and command relationships. The Board thus had reasons for its decision other than avoiding a precedent likely to increase its workload.

there been a procedural irregularity, making the Board's recommended decision final would be an inappropriate remedy. *See Koniag,* 580 F.2d at 611.

Accordingly, we reverse the grants of summary judgment to appellees.