# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  00-2780

_____

| | | |
|---|---|---|
| Contract Freighters, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Petition for Review of an |
| Secretary of United States | * | Order of the Bureau of |
| Department  of Transportation, | * | Transportation Statistics |
| United States Department of | * | |
| Transportation, Bureau of | * | |
| Transportation Statistics, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted:  April 13, 2001

Filed: August 10, 2001

_____

Before BYE and BEAM, Circuit Judges, and NANGLE,[1] District Judge.

_____

BYE, Circuit Judge.

Contract Freighters, Inc., (CFI) petitions for review of an order of the Bureau of Transportation Statistics (BTS).  The parties have different views about what standard

_____

[1]The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

a motor carrier must satisfy to exempt from public disclosure certain financial data submitted to the Department of Transportation (DOT). CFI contends that the BTS should have granted an exemption upon CFI's showing that it treats financial data as confidential information. The BTS denied CFI's exemption request, concluding that CFI had to show that substantial competitive harm was likely to result from disclosure. We affirm the order.

For many years, motor carriers were required to disclose certain financial information to the Interstate Commerce Commission (ICC), subjecting the information to public disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. When Congress abolished the ICC by passing the Interstate Commerce Commission Termination Act of 1995 (ICCTA), Pub. L. No. 104-88, 109 Stat. 803, some members of Congress wanted to abolish the concomitant financial data reporting requirements. As a compromise, Congress included within the ICCTA the provisions found at 49 U.S.C. § 14123. The statute requires reporting, but allows motor carriers to request that the financial information reported to the DOT[2] be exempt from public disclosure under certain circumstances.

Twenty motor carriers, including CFI, filed exemption requests after the passage of the ICCTA. CFI supported its exemption request with evidence showing that it treated its financial data as confidential information. CFI also described various competitive harms that would result from public disclosure, but failed to demonstrate that disclosure would cause substantial competitive harm. Relying on a regulation adopted after notice and comment, wherein it concluded that § 14123 requires a motor carrier to demonstrate substantial competitive harm before an exemption will be

---

[2]Congress transferred some functions of the ICC to the DOT, including the administration of the motor carrier financial data reporting program. The DOT, in turn, assigned the reporting program to the BTS.

allowed, the BTS ultimately denied the majority of the exemption requests, including CFI's.  Pursuant to 28 U.S.C. § 2342(3)(A), CFI asks us to review that conclusion.[3]

> The agency's interpretation of its governing statutes presents, of course, a question of law, and courts normally review questions of law de novo, but that rule does not apply in the present context. Congress has specially assigned to the Department of Transportation the responsibility of interpreting and administering the statute[] in question, [49 U.S.C. § 14123]. The Supreme Court has many times made clear that this sort of question of law is for the agency to decide, so long as its interpretation of the statute is reasonable.

City of St. Louis v. Dep't of Transp., 936 F.2d 1528, 1533 (8th Cir. 1991) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 864-66 (1984)). With that standard of review in mind, we turn our attention to the language of the statute.

The statute provides that an exemption from public disclosure shall be granted "if the Secretary finds that the exemption requested is necessary to avoid competitive harm *and* to avoid the disclosure of information that qualifies as a trade secret or

---

[3]CFI also claims that BTS's failure to act upon its exemption request in a timely manner should be deemed an approval of the request.  See 49 U.S.C. § 14123(c)(2)(B) (requiring the Secretary to act upon exemption requests within 90 days).  We disagree. When Congress requires an agency to act within a certain period but does not state the consequences of failing to do so, the time period is ordinarily construed to be directory rather than mandatory, such that an agency still has power to act after the time period has run.  See, e.g., Kinion v. United States, 8 F.3d 639, 644 (8th Cir. 1993). "[T]he proper recourse for a party aggrieved by delay that violates a statutory deadline is to apply for a court order compelling agency action." Gottlieb v. Peña, 41 F.3d 730, 734 (D.C. Cir. 1994).  Section 14123 sets forth no consequences for BTS's failure to act within 90 days.  Therefore, CFI's remedy for dilatory conduct was a court order compelling agency action, not a default exemption.

privileged or confidential information under section 552(b)(4) of title 5." 49 U.S.C. § 14123(c)(2)(B) (emphasis added). Thus, a motor carrier must show that (1) an exemption is necessary to avoid competitive harm, and (2) the financial information qualifies as a trade secret or privileged or confidential information under Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4). The parties' dispute centers on the statute's incorporation by reference of the test for satisfying Exemption 4.

Exemption 4 of the FOIA forbids public disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). In 1974, the D.C. Circuit adopted a test for interpreting this terse reference to confidential information. The court said that a commercial or financial matter is confidential when "disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974).

This test, known as the National Parks test, has been widely recognized and applied by the circuit courts when construing Exemption 4. See OSHA Data/CIH, Inc. v. United States Dep't of Labor, 220 F.3d 153, 162 n.24, 167-68 (3rd Cir. 2000); GC Micro Corp. v. Def. Logistics Agency, 33 F.3d 1109, 1112-13 (9th Cir. 1994); Anderson v. Dep't of Health & Human Services, 907 F.2d 936, 947 (10th Cir. 1990); Hercules, Inc. v. Marsh, 839 F.2d 1027, 1029 (4th Cir. 1988); Gen. Elec. Co. v. United States Nuclear Regulatory Comm'n, 750 F.2d 1394, 1403 (7th Cir. 1984); 9 to 5 Org. for Women Office Workers v. Bd. of Governors of Fed. Reserve Sys., 721 F.2d 1, 8 (1st Cir. 1983); Cont'l Stock Transfer & Trust Co. v. S.E.C., 566 F.2d 373, 375 (2d Cir. 1977); Cont'l Oil Co. v. Fed. Power Comm'n, 519 F.2d 31, 35 (5th Cir. 1975).

Significantly, the D.C. Circuit has observed that "the National Parks test became known to and acquiesced in by Congress" when Congress looked to FOIA and the

National Parks test for a parallel confidential information exemption for the open meeting rules at 5 U.S.C. § 552b. CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1153 n.146 (D.C. Cir. 1987). Presumably, then, Congress also knew about, and acquiesced in, the National Parks test when it expressly incorporated Exemption 4 into the ICCTA in 1995. See Downer v. United States, 97 F.3d 999, 1003 n.3 (8th Cir. 1996) ("Congress is presumed to know the legal background in which it is legislating.").

After the ICCTA was enacted, the BTS announced that it "will follow FOIA law on the standard that must be met [under 49 U.S.C. § 14123]. Information is confidential under Exemption Four if disclosure would be likely to cause substantial harm to the competitive position of the person from whom the information was obtained or would impair a protectable government interest." 64 Fed. Reg. 13916, 13920 (Mar. 23, 1999). Following public notice and comment, the BTS adopted a regulation implementing 49 U.S.C. § 14123, which provides that "[i]nformation is considered to be confidential when . . . [d]isclosure of the information in the carrier's report would be likely to cause substantial harm to the carrier's competitive position." 49 C.F.R. § 1420.9(b)(1).

Essentially, then, the second part of § 14123's test (incorporating Exemption 4) requires a motor carrier to show "substantial competitive harm," whereas the first part of the test requires a motor carrier to show only "competitive harm." Supra at 3-4. CFI seizes upon this arguable redundancy, and a passage from the statute's legislative history,[4] to contend that Congress meant for the BTS to grant an exemption whenever

[4]The legislative history provides that

Some Members of the Committee were in favor of eliminating the reporting requirement altogether while others were in favor retaining it. The provision included in new section 14123 is a compromise which directs that the Secretary shall require financial reporting for Class I carriers and may require financial reporting for Class II carriers. Since

a motor carrier showed that it treated financial information as confidential, rather than requiring the motor carrier to prove substantial competitive harm. CFI contends that Congress did not mean to incorporate the stringent National Parks standard into § 14123, but rather the less-demanding standard developed in Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992).

In Critical Mass, the D.C. Circuit distinguished between information submitted to the government under compulsion, and information provided to the government voluntarily. The court reaffirmed the National Parks test for information submitted under compulsion, but held that "financial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it

---

many companies have raised concerns regarding the administrative burden in collecting and filing the information, the Secretary has discretion in requiring smaller carriers to file. Recognizing the legitimate concerns of privately-held companies about preserving the confidentiality of certain business information, upon request, the Secretary can exempt privately-held companies from the public release of their reports if it is necessary to avoid competitive harm and the disclosure of information that qualifies as a trade secret or privileged or confidential information under section 552(b)(4) of title 5. The Committee expects that the Secretary will review requests for exemptions from publication in a fair, reasonable manner. For example, the Secretary should allow an exemption *where the filer has demonstrated a history of its treatment of the reports as trade secrets or privileged or confidential information*, which history may include filing of such reports under a claim of confidentiality, litigation to prevent their release to the public, or release of such reports by the filer to third parties under confidentiality agreements or understanding.

H.R. Rep. 104-311, at 118 (Nov. 6, 1995), reprinted in 1995 U.S.C.C.A.N. 793, 830 (emphasis added).

is of a kind that would customarily not be released to the public by the person from whom it was obtained." Critical Mass, 975 F.2d at 879.

The Critical Mass standard clearly does not apply here, however, because motor carriers do not voluntarily disclose financial reports to the DOT, they must do so. See 49 U.S.C. § 14123(a)(1) ("The Secretary *shall require* . . . motor carriers to file with the Secretary annual financial and safety reports.") (emphasis added). Therefore, we must view § 14123's reference to Exemption 4 as incorporating the more stringent National Parks standard, despite the arguably inconsistent legislative history. When a statute is plain and unambiguous, as this one is, the courts cannot resort to legislative history to interpret it. E.g., United States v. Gonzalez, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").[5]

CFI also relies upon statements about the statute's meaning, made by three members of Congress in support of certain motor carrriers' exemption requests. "But post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. Such statements represent only the personal views of these legislators since the statements were made after the passage of the Act." Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 132 (1974) (internal citations and quotations omitted).

CFI contends that use of the substantial competitive harm test eviscerates the exemption provisions of § 14123. We sympathize with CFI's position. We agree that

---

[5]Even if the statute were ambiguous, our standard of review obligates us to defer to an agency's reasonable interpretation of the statute. See United Transp. Union v. Slater, 149 F.3d 851, 853-54 (8th Cir. 1998). Given the statute's direct reference to FOIA Exemption 4, and the compulsory nature of the disclosure involved, we would be hard-pressed to conclude that the Secretary unreasonably adopted the "substantial" harm test.

motor carriers will have great difficulty obtaining exemptions under the current version of the statute, and, if we were to consider the statute's legislative history, would conclude that the statute fails to accomplish the compromise Congress sought. But we decline to rewrite the statute, and therefore have no choice but to affirm the order of the BTS. If Congress did not mean what it explicitly said, CFI must seek a legislative solution rather than a judicial one.

Finally, CFI contends that the BTS improperly read a "unique circumstances" requirement into the standard for granting an exemption. In a section of its order entitled "General Discussion of the Requests," the BTS stated that it "must deny requests that do not present unique circumstances. If a carrier does not present unique circumstances and is granted confidentiality, then all carriers would qualify because they are similarly situated and the statutory intent would be frustrated." CFI urges us to remand this case for reconsideration because the BTS erroneously incorporated a showing of uniqueness into the legal standard used to consider exemption requests.

We believe that the order's reference to unique circumstances was merely an inartful description of a motor carrier's duty to make a particularized showing of the substantial competitive harm necessary to satisfy the statutory standard. In other words, generalized allegations cannot establish that disclosure of the financial reports would cause substantial competitive harm. Our review of the entire order satisfies us that the BTS clearly understood that, while a motor carrier must make a particularized showing of substantial competitive harm, it need not show "unique circumstances" to qualify for an exemption.

We affirm the order of the BTS, and deny the relief requested by CFI in its petition for review.

-8-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.