E. Keene **WOLCOTT, et al., Plaintiffs,**

v.

David **GINSBURG, et al., Defendants.**

**Civ. A. No. 85–1088.**

United States District Court,
District of Columbia.

Sept. 23, 1988.

Brock R. Landry, Robin W. Grover, Keck, Mahin & Cate, Washington, D.C., George E. Weaver, Chicago, Ill., for plaintiffs.

John P. Arness, Jamie M. Bennett, L. Anthony Sutin, Hogan & Hartson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### I.

This matter comes before the Court on a series of motions. Presently before us are 1) plaintiffs' Motion for Partial Summary Judgment against the law firm defendants[1] on their Amended Complaint; 2) the law firm defendants' Cross-motion for Summary Judgment on plaintiffs' com-

---

1. The "law firm defendants" include the law firm of Ginsburg, Feldman and Bress, Char-tered, and the individual members of the firm, including Myer Feldman.

plaint; 3) plaintiffs' Motion for Summary Judgment on defendants' counter-claims; and 4) defendants' Motion for Partial Summary Judgment on their counterclaims. For the reasons stated below, we deny plaintiffs' motion for partial summary judgment, grant in part and deny in part defendants' motion for summary judgment, deny defendants' motion for partial summary judgment on their cross-claims and grant plaintiffs' motion for summary judgment on defendants' cross-claims.

## II.

## BACKGROUND

Plaintiffs E. Keene Wolcott and Daniel B. Nelsen, Jr. are two of fourteen original limited partners who entered into a partnership known as "Desert Exploration '76" ("DE" or "the partnership"). They bring this suit derivatively, seeking to enforce alleged rights of the partnership against the defendants.[2] DE was created to exploit petroleum resources under a Concession Agreement with the State of Israel for the exploration, development and production of petroleum in a certain area of the Sinai. In February 1980, DE filed a request for arbitration against the State of Israel. Desert Exploration hired the law firm of Ginsburg, Feldman and Bress, Chartered ("GF & B"), to represent the partnership in the arbitration proceeding. As part of its request for arbitration, DE designated a party-appointed arbitrator.

The Attorney General for the State of Israel wrote DE counsel in the Summer of 1982, indicating that Israel intended to terminate the arbitration proceedings, based upon DE's failure to disclose, for more than two years, a "retainer agreement"

between the Partnership and its party-appointed arbitrator.[3] Israel moved in the District Court for Tel Aviv–Jaffa shortly thereafter seeking an order confirming the State's decision to terminate the arbitration. On July 30, 1982, the Tel Aviv–Jaffa District Court issued a decision holding that Israel's termination of the arbitration was proper. Counsel for DE filed an appeal to the Supreme Court of Israel. A ten million dollar settlement agreement was ultimately reached between the parties, and the appeal was withdrawn. In 1983 the Supreme Court in Jerusalem granted the parties' joint petition to vacate the decision of the Tel Aviv–Jaffa District Court, consistent with the terms of the DE–Israeli settlement agreement.

The parties agreed to condition the distribution of proceeds from the Israeli settlement upon each limited partner's signing a release form discharging the general partners of DE and the Board of Directors of DE from all future liability.[4] Each of the limited partners signed a release, and all received the monies agreed upon in the settlement. After a "winding up" period of approximately seven months, the remaining assets were distributed to the partners, and the partnership was terminated. Plaintiffs filed this derivative suit some eighteen months after the partnership was dissolved.

Wolcott and Nelsen allege that the law firm defendants breached their fiduciary duty as attorneys and were negligent in their representation of DE. They also charge that Myer Feldman breached the Limited Partnership Agreement of Desert Exploration and his fiduciary duty as a general partner to the limited partners. Fi-

---

**2.** Plaintiffs bring this suit against Ginsburg, Feldman and Bress, Chartered, Desert Exploration, Ltd., and the individual partners of the above-referenced law firm.

**3.** Plaintiffs allege in their amended complaint that on or about February 15, 1980, defendants Myer Feldman and Lee Marks, and a William White made "an unlawful payment of $10,000" to DE's party-appointed arbitrator. Defendants Feldman and Marks are partners in the law firm of GF & B. Marks was the lead counsel on behalf of GF & B in the DE–Israeli arbitration.

Feldman was a general partner in DE during at least some of the events in question. White was a general partner in DE as well.

**4.** The releases state in pertinent part that the various parties "release and discharge the general partners of Desert Exploration–76 and the Board of Directors of Desert Exploration, Ltd. from any and all claims and demands in any way related to the conduct of the business of Desert Exploration–76, including, but not limited to, the distribution of proceeds."

nally, plaintiffs claim that Myer Feldman and Lee Marks fraudulently concealed the existence of the allegedly unlawful payment. They seek recovery on behalf of the partnership in an amount in excess of $5,000,000 in compensatory damages and $1,000,000 in punitive damages.

## III.

## DISCUSSION

### A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on their amended complaint. Specifically, they seek a determination by this court that the decision of the Tel Aviv–Jaffa District Court is binding on the law firm defendants in this action.[5] It is their position that the doctrines of collateral estoppel and/or *res judicata* require such an outcome. We disagree.

 First, it is clear that the Israeli decision is not entitled to preclusive effect, as it was vacated by the Israeli Supreme Court in Jerusalem. As a general matter a judgment which is vacated, for whatever reason, is deprived of its conclusive effect, both as collateral estoppel and *res judicata*. *Dodrill v. Ludt,* 764 F.2d 442, 444 (6th Cir.1985); *Universal City Studios, Inc. v. Nintendo Co.,* 578 F.Supp. 911, 919 (S.D.N.Y.1983), *aff'd,* 746 F.2d 112 (2d Cir.1984); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.416[2] at 2231 (2d ed. 1984). Plaintiffs have offered no valid reason for us to depart from this established rule. Second, fairness and equity counsel against binding the law firm defendants by the prior Israeli District Court adjudication. Plaintiffs Wolcott and Nelsen essentially ask this court to assume the factual and legal heart of their claim. This would be wholly inappropriate in the context of this case. The law firm defendants were not parties to the underlying litigation and, contrary to plaintiffs' assertions, were not in control of the Israeli suit.[6] As a result, GF & B did not have an opportunity to appeal the decision of the Israeli District Court and to potentially vindicate itself. DE did not have the same interest in pursuing the claim as GF & B would have had were it a party to the Israeli proceedings, since the latter's reputation was directly at stake, while the former's was not. In any event, the decision of the Israeli District Court was vacated and no longer had any effect. Accordingly, we deny plaintiffs' motion for partial summary judgment.

### B. Law Firm Defendants' Motion for Summary Judgment

Defendants assert five arguments in support of their motion for summary judgment. First, they argue that plaintiffs' claims against defendant Myer Feldman are absolutely barred by the releases which each of the limited partners, including plaintiffs, signed. Second, they claim that the releases apply by law to the law firm and the individual partners of the law firm as well, since they were agents of DE and the general partners. Third, they assert that the plaintiffs should be estopped from proceeding with this suit, based on the doctrine of quasi-estoppel. Fourth, they argue that plaintiffs are foreclosed from bringing this suit derivatively on behalf of the partnership, as the partnership no longer exists. Finally, defendants Robert Hawkins and Celia Roady argue that, under District of Columbia law, they are entitled to dismissal from this suit because they

---

5. The Tel Aviv–Jaffa District Court found 1) that the "retainer" should have been disclosed to Israel at the commencement of the arbitration in 1980; 2) that the retainer was not in fact disclosed to Israel until June 4, 1982; and 3) that the non-disclosure of the "retainer" constituted a breach of the arbitration agreement and justified Israel's termination of the arbitration.

6. Lawyers are ethically obliged to abide by their client's substantive decisions. Plaintiffs have not presented any evidence indicating that the law firm defendants acted contrary to the wishes of DE and its Board of Directors in settling the claim against Israel. We reject plaintiffs' contention that the law firm defendants were in control of the Israeli litigation merely because they participated in it. Conclusive allegations of sinister motive and innuendo are insufficient to establish that GF & B was in fact in "control" of the underlying litigation.

became partners in GF & B *after* the cause of action accrued. We find some of these arguments meritorious, and reject others.

1. *Release of Myer Feldman as General Partner of DE*

■ As indicated, each of the limited partners signed a document:

releas[ing] and discharg[ing] the general partners of Desert Exploration–76 and the Board of Directors of Desert Exploration, Ltd. from any and all claims and demands in any way related to the conduct of the business of Desert Exploration–76, including, but not limited to, the distribution of proceeds.

For purposes of our analysis, releases are to be treated as contracts, and general contract principles apply. *Bartel Dental Books Co. v. Schultz,* 786 F.2d 486, 488 (2d Cir.1986), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986). Defendant Feldman argues that plaintiffs are, by the plain terms of their covenants, barred from proceeding against him in any capacity. Plaintiffs argue that the releases are void, because they were unsupported by consideration, and were obtained by Feldman in breach of his fiduciary duty as a general partner to them as limited partners. We reject these arguments, and ac-

cordingly dismiss this action against Feldman in his capacity as a general partner of DE.[7]

Under District of Columbia law,[8] consideration is required in order for a release to be valid. *City Stores Co. v. Ammerman,* 266 F.Supp. 766, 779 (D.D.C.1967), *aff'd,* 394 F.2d 950 (D.C.Cir.1968). Plaintiffs assert that the defendants simply gave them what they were already entitled to in exchange for signing the releases. We reject plaintiffs' characterization of the transaction. The record demonstrates more than amply that the plaintiffs did in fact receive consideration in exchange for their signatures to the release. The Partnership Agreement vests "sole management authority and control of the Partnership business" in the General Partners. It further provides that "the Limited Partners, individually and collectively, may exercise no control in the management of the Partnership business." Partnership Agreement, Article 13, ¶ 13.1. The Agreement gives the management of DE absolute discretion to retain until termination of the partnership any net income which is necessary for working capital. Article 9, ¶ 9.1.2. Finally, the Partnership Agreement states that "no Partner shall have the right to demand the return of all or any part of his capital

---

**7.** While the parties did not brief the issue, it appears to us that the release did not discharge Myer Feldman from any potential claims against him in his capacity as a member of GF & B. Releases are essentially contracts. While we agree that the releases explicitly relieve Mr. Feldman of any potential liability in connection with his conduct as a general partner and member of the Board of Directors of DE, we see no evidence that the parties intended to release him in his capacity as law partner as well.

**8.** There is some question as to which law applies here. Under New York law, releases are not invalid because of the absence of consideration. New York General Obligations Law, § 15–303. District of Columbia law is to the contrary. *City Stores Co. v. Ammerman,* 266 F.Supp. 766, 779 (D.D.C.1967), *aff'd,* 394 F.2d 950 (D.C.Cir.1968).

The Agreement of Limited Partnership of Desert Exploration–'76 ("Agreement" or "Partnership Agreement") states that the "agreement shall be construed and enforced in accordance with the laws applicable to contracts made and performed entirely within the State of New

York." Agreement, ¶ 19.8. While New York State law does apply to contract disputes, the issue before us does not involve an interpretation or application of the Agreement. Thus, New York State law does not necessarily apply.

In diversity cases a federal court must apply the choice of law principles of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct 1020, 85 L.Ed. 1477 (1941). Under District of Columbia law, once a conflict is discovered, the court must determine which jurisdiction has the "more substantial interest." *DeMontmorin v. DuPont,* 484 A.2d 582, 585 (D.C.1984); *Eli Lilly & Co. v. Home Ins. Co.,* 764 F.2d 876, 882 (D.C.Cir.1985); *Blair v. Prudential Insurance Co.,* 472 F.2d 1356, 1359 (D.C.Cir.1972). We find that the District of Columbia has a greater interest in the controversy before us. While the principal place of business of the partnership was New York, the transactions in question have a greater nexus with Washington. The District of Columbia has an interest in ensuring that individuals within its borders are protected, and not made to sign release agreements, without receiving at least minimal consideration in return.

contribution...." Article 14, ¶ 14.4. Thus, the plaintiffs had *no right* to receive their portion of the proceeds from the Israeli settlement when they did. The benefit they received was in having access to the money sooner, rather than later.[9]

Plaintiffs claim that as a general partner of DE, Myer Feldman owed them a fiduciary duty, and that he breached this duty by holding their share of the ten million dollars ransom until they signed the proffered releases and that the releases were void. The facts belie this claim, however. At the time that the Board of Directors took this step, Myer Feldman was no longer a General Partner.[10] Thus, he could not have breached any fiduciary duties owed to them in his capacity as such.

In sum, we find there are no material facts in dispute on this matter, and Myer Feldman is entitled to judgement on this issue as a matter of law. The releases signed by the limited partners are valid and enforceable. Plaintiffs are, therefore, foreclosed from bringing this suit against Myer Feldman in his capacity as a General Partner of DE.

### 2. *Release of Law Firm & Individual Partners*

Defendants argue that the releases apply by law to the law firm defendants as well. We reject this argument.

■ Under District of Columbia law,[11] the release of a principal bars suit against an agent for the underlying tort *if the parties to the release so intended. Hill v. McDonald,* 442 A.2d 133, 138 n. 5 (D.C. 1982). We find little or no evidence to suggest that the parties jointly intended for the releases to encompass the law firm defendants. The language in the document is specific and clear. No reference is made to the law firm defendants. This is telling, especially since GF & B participated in the drafting of the release.

Defendants claim that the conduct of DE and the limited partners reveals that the partnership did not intend to pursue any action against the law firm defendants, and that the partnership accordingly intended to release them from liability. The two propositions do not necessarily follow. Defendants rely entirely on inference. The fact of the matter is that the parties did not expressly, or by reasonable inference, indicate their intention to release the law firm defendants, and that the defendants have failed to present any evidence, other than inference of the weakest sort, of the plaintiffs' intention to do so.[12]

### 3. *Quasi–Estoppel*

Defendants claim that the plaintiffs should be estopped from bringing this suit, because all of their post-arbitration actions, up until the filing of this suit, evidenced a conscious decision to forego litigation against the law firm. Defendants argue that basic considerations of equity, and the doctrine of quasi-estoppel, preclude plaintiffs from taking a divergent course, and bringing suit now. We reject this argument, and see no reason to exercise whatever equitable powers we possess in the context of this case.

■ Plaintiffs filed this action within the time period allowed under the relevant statute of limitations. They gained no advantage to themselves through their alleged inconsistent course of conduct, and the harm to defendants is no more than is typically to be expected when litigation is

---

**9.** Defendants contend that the Board of Directors of DE exercised their sound business judgment in deciding not to disburse these funds until they knew what the partnership's potential liability towards its limited partners would be.

**10.** Myer Feldman was a member of the Board of Directors which decided, in concert, to require the individual Limited Partners to sign releases before their portion of the proceeds from the Israeli settlement would be distributed.

**11.** For a discussion of the choice of law question, see footnote 8, *supra.*

**12.** Our conclusion is strengthened by policy concerns. Attorneys should not be allowed to avoid potential liability simply by drafting vague release agreements on behalf of their clients. This is especially so in light of the Disciplinary Regulations, which limit the ability of attorneys to solicit releases from malpractice liability from their clients.

filed sometime after the events in question, but prior to the running of the statute of limitations. At its core, defendants argue that Nelsen and Wolcott should be foreclosed from bringing this suit because they did not inform them earlier of their intention to sue. As a general rule, plaintiffs are not obliged to inform their adversaries of their intentions to sue. Plaintiffs never explicitly told the defendants that they would not pursue their claims. Defendants assert that it was reasonable for them to assume, from the conduct of both the partnership [13] and the partners, that no future suit would be forthcoming. If defendants had desired, however, the law firm defendants could have sought an explicit release. This would have been a reasonable precaution, given their knowledge that a possible malpractice suit was being contemplated against them. Defendants did not seek such a release, however. In the context of this case, fairness and equity require that plaintiffs be allowed to proceed.

### 4. Derivative Action on Behalf of Terminated Partnership

Defendants argue once again that the plaintiffs can not proceed with this suit, because the entity on whose behalf they wish to bring this suit no longer exists. This court previously resolved this issue against defendants in an Order issued on July 17, 1986. As is evident from the Order, the court was aware that DE had been dissolved some time prior to the filing of this suit, but nevertheless found that the plaintiffs could proceed. We hold that the "law of the case" rule accordingly applies. We will not, therefore, review again the merits of defendants' contentions.

### 5. Partners named after July 1982

■ Defendants Robert Hawkins and Celia Roady became partners after July 1982. They argue that, pursuant to § 41–116 of the District of Columbia Code, they should be dismissed from this action, because the cause of action at issue here accrued prior to their tenure as partners. We find that their argument has merit, and accordingly dismiss them in their personal capacity.

### C. Defendants' Motion for Partial Summary Judgment on their Cross-claims

The law firm defendants have filed three separate counterclaims against the plaintiffs.[14] In virtually identical pleadings, they assert two theories of relief. First, they argue that the plaintiffs breached the release agreement by filing this suit. Second, they allege that the plaintiffs violated an implied-in-fact covenant not to sue. Presently before us are the law firm defendants' motion for partial summary judgment and the plaintiffs' motion for summary judgment on defendants' cross-claims. Because these motions raise identical issues, we discuss them in unison. For the reasons stated below, we find defendants' counter-claims to be wholly lacking in merit, and accordingly deny their motion for partial summary judgment. For the same reasons, we also grant plaintiffs' motion for summary judgment on defendants' counter-claims.

### 1. Breach of Release Agreement

■ Given our previous determination that the releases in question did not encompass the law firm defendants, GF & B and its partners must necessarily fail in their breach of release claim. The only real question before us is whether Myer Feld-

13. Defendants point out elsewhere that the Limited Partners did not have the right to manage the partnership. Nevertheless, they attempt to attribute various actions by the partnership to the plaintiffs here. Even assuming *arguendo* that this approach is appropriate because this is a derivative suit, we find that quasi-estoppel does not apply. Plaintiffs did not gain from the allegedly inconsistent conduct. In addition, the harm which the law firm defendants now allege to their interest could have been easily avoided had they sought an explicit release regarding any potential liability that they might have to DE or its partners.

14. The three separate cross-claims were filed on behalf of Robert Hawkins and Celia Roady; Myer Feldman; and the remaining law firm defendants. Hawkins and Roady seek to recover two million dollars on their cross-claim, as do Feldman and the remaining law firm defendants.

man can recover against the plaintiffs for his costs in defending that portion of this suit launched against him in his capacity as a general partner. We find that he can not do so. Damages should not be awarded against those plaintiffs who have made a good faith challenge to the very existence or validity of an alleged covenant not to sue. *Winchester Drive–In Theatre, Inc. v. Warner Bros. Picture Distrib. Corp.,* 358 F.2d 432, 436 (9th Cir.1966); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 529 (2d Cir.1985). When parties challenge in good faith the very existence or validity of an agreement of this, they can not be penalized for so doing. "It cannot justly be contended that the disputant is not entitled to his day in court," to determine the very validity of the covenant. *Winchester,* 358 F.2d at 436. Absent express language, we should not "read such a covenant, without more, as intended to subject to damages a plaintiff who claimed in good faith that it had been obtained by unfair means." *Bellefonte,* 757 F.2d at 529 (citing *Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002, 1008 (2nd Cir.1966)). We find that plaintiffs' challenge was not brought in bad faith, was not frivolous, nor imposed for purposes of delay. Under such circumstances a party in defense is required to pay its own costs.

### 2. *Implied-in-fact Claim*

We also reject defendants' claim that plaintiffs have breached an implied covenant not to sue. The pattern of partnership conduct alleged by the defendants does not raise to the level necessary to establish an implied-in-fact contract. In addition, we note that the plaintiffs did not receive any consideration in exchange for their alleged promise not to sue. It is hard to see what, if anything, they could have gained from such a promise.

In sum, we find with respect to defendants' cross-claims that there are no material facts in dispute, and that plaintiffs are entitled to judgment in their favor as a matter of law.

In summary, we hold that the releases executed by plaintiffs in favor of defendants insulate them from all claims asserted against defendants as directors and general partners of DE. On the other hand, these same releases, which are clear on their face, do not extend to their possible liability in their capacity as attorneys for breach of their fiduciary obligations.

An order consistent with the foregoing is entered this day.

### ORDER

In accordance with the foregoing Memorandum Opinion, it is by the Court this 22nd day of September, 1988

ORDERED that plaintiffs' Motion for Partial Summary Judgment on their Amended Complaint is denied; and it is

ORDERED that defendants' Motion for Summary Judgment is granted in part and denied in part; and it is

ORDERED that defendants' Motion for Partial Summary Judgment on their Cross-claims is denied; and it is

ORDERED that plaintiffs' Motion for Summary Judgment on Defendants' Cross-claims is granted; and it is

FURTHER ORDERED that a status call shall be set for October 27, 1988 at 9:30 a.m. in Courtroom No. 12, United States District Court for the District of Columbia.