64 F.3d 702
 314 U.S.App.D.C. 198
 BROTHERHOOD OF RAILWAY CARMEN DIVISION, TRANSPORTATION
COMMUNICATIONS INTERNATIONAL UNION, Petitioner,
v.
Federico PENA, Secretary, Department of Transportation, and
Jolene Molitoris, Administrator, Federal Railroad
Administration, Respondents.
 Nos. 94-1156, 95-1169.
 United States Court of Appeals,
 District of Columbia Circuit.
 Argued March 31, 1995.
Decided Sept. 1, 1995.
Rehearing and Suggestion
for Rehearing In Banc
Denied Oct. 16, 1995.
 
 Petitions for Review of an Order of the United States Department of Transportation.
 Newton G. McCoy, argued the cause, for petitioner. C. Marshall Friedman, Thomas P. McDermott, St. Louis, MO, and Mitchell M. Kraus, Rockville, MO, were on the briefs, for petitioner.
 Robert D. Kamenshine, Atty., U.S. Dept. of Justice, with whom Frank W. Hunger, Asst. Atty. Gen., and Robert S. Greenspan, Atty., U.S. Dept. of Justice, Washington, DC, were on the brief, argued the cause, for respondents. Peter J. Plocki, Atty., U.S. Dept. of Transp., Washington, DC, entered an appearance, for respondents.
 Before BUCKLEY, WILLIAMS, and TATEL, Circuit Judges.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 In these consolidated cases, we are asked to consider two petitions for review of a final rule issued by the Federal Railroad Administration. The first was filed while a petition for reconsideration was still pending before the agency; the other was submitted several months after the statutory deadline for the filing of a petition challenging the rule. We dismiss both petitions as untimely.
 
 I. BACKGROUND
 
 2
 On August 16, 1993, the Federal Railroad Administration ("FRA") issued a final rule "revising the exclusionary language [exempting train or yard crews from 'blue signal' safety regulations] to allow augmentation of a crew with a 'utility' employee, and creating alternate safety procedures to prevent injury to these employees." Protection of Utility Workers, 58 Fed.Reg. 43,287 (Aug. 16, 1993) ("Final Rule"). The FRA concluded that a utility employee, who is defined as a "railroad employee assigned to and functioning as a temporary member of a train or yard crew," 49 C.F.R. Sec. 218.5 (1994), should be allowed to work under essentially the same conditions as other train or yard crew members. 58 Fed.Reg. at 43,288.
 
 
 3
 The Brotherhood of Railway Carmen ("BRC") petitioned for reconsideration of the Final Rule on September 3, 1993. The FRA's regulations provide that "[e]ach petition [for reconsideration] shall be decided not later than 4 months after its receipt by the Docket Clerk." 49 C.F.R. Sec. 211.31(a) (1994). Nevertheless, four months after the filing of the BRC's petition for reconsideration, the FRA had not rendered its decision. On March 7, 1994, the BRC filed the petition for review that is docketed as case number 94-1156. Three days later, the FRA denied its petition for reconsideration.
 
 
 4
 Subsequently, on March 1, 1995, the FRA published its "respon[ses] to the concerns raised in petitions to reconsider the final rule" and announced two amendments to the Rule, including one that would "permit single-person crews to work within the protections provided for train and yard crews." Response to Petitions to Reconsider, 60 Fed.Reg. 11,047 (Mar. 1, 1995) ("1995 Response "). The BRC thereupon filed the petition for review that is docketed as case number 95-1169. This petition sought to reopen the debate on the Final Rule by "request[ing] the Court to declare invalid those provisions of the [Final Rule] that exceed the Respondents' authority...." Pet. for Review, No. 95-1169 (Mar. 20, 1995).
 
 
 5
 On May 8, 1995, the FRA responded by filing a motion requesting that we consolidate No. 95-1169 with No. 94-1156 and dismiss the petition for lack of appellate jurisdiction. We grant the motion to consolidate and deny both petitions for review for the reasons set forth below.
 
 II. DISCUSSION
 A. No. 94-1156
 
 6
 As we have repeatedly held, a "petition for review filed while a request for agency reconsideration is pending is 'incurably premature.' " Tennessee Gas Pipeline Co. v. FERC, 9 F.3d 980, 980-81 (D.C.Cir.1993) (citing TeleSTAR, Inc. v. FCC, 888 F.2d 132, 133-34 (D.C.Cir.1989)). Nonetheless, relying on the general principle that federal agencies must comply with their own rules, see Panhandle Eastern Pipe Line Co. v. FERC, 613 F.2d 1120, 1135 (D.C.Cir.1979) (it is "axiomatic that an agency is bound by its own regulations"), the BRC argues that we must treat the FRA's failure to reach a decision on its petition for reconsideration within the regulatory deadline as tantamount to agency action, thus rendering its petition timely.
 
 
 7
 The BRC reasons as follows: Section 211.31(a) of the regulations provides, in its entirety, that
 
 
 8
 [t]he Administrator may grant or deny, in whole or in part, any petition for reconsideration of a final rule without further proceedings. Each petition shall be decided not later than 4 months after its receipt by the Docket Clerk. In the event he determines to reconsider a rule, the Administrator may amend the rule or initiate a new rulemaking proceeding. An appropriate notice is published in the FEDERAL REGISTER.
 
 
 9
 49 C.F.R. Sec. 211.31(a) (emphases as provided in BRC brief). The BRC concludes from this language that the FRA may not amend the rule or initiate a new rulemaking unless it has rendered a decision on a pending petition within the four-month deadline. Therefore, it argues, "[t]he agency action became final due to the agency's inaction." Brief for Petitioner at 24. This reasoning, of course, presupposes that the deadline is mandatory. Thus the question we must decide is whether the deadline imposed by the section is mandatory or merely directory.
 
 
 10
 In Gottlieb v. Pena, 41 F.3d 730, 733-37 (D.C.Cir.1994), we addressed that question at some length, albeit in the context of a deadline established by statute rather than regulation. In reviewing recent Supreme Court cases, we noted that the Court had reaffirmed that " 'if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.' " Id. at 734 (quoting United States v. James Daniel Good Real Property, --- U.S. ----, ----, 114 S.Ct. 492, 506, 126 L.Ed.2d 490 (1993)). Moreover, "the mere use of the word 'shall' in [a statute], standing alone, is not enough to remove the Secretary's power to act" after the lapse of the statutory deadline. Brock v. Pierce County, 476 U.S. 253, 262, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986). Finally, the Court has observed that "[w]hen ... there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." Id. at 260, 106 S.Ct. at 1839 (footnote omitted).
 
 
 11
 Thus, absent a clear indication that Congress intended otherwise, we will deem a statutory deadline to be directory. We see no reason why we should not apply the same principle to a regulatory deadline. An agency, after all, is presumably no more inclined than Congress to place constraints on administrative action, especially when it is its own.
 
 
 12
 Unfortunately for the BRC, section 211.31(a) meets the tests used by the Supreme Court in finding that a statutory deadline is directory. Its use of the word "shall" is no more indicative of a mandatory intent than the Supreme Court found it to be in Pierce County. See 476 U.S. at 262, 106 S.Ct. at 1840. Nor does the section specify any consequences that would result from the failure of the FRA to act on a petition within four months of its filing. The BRC, of course, would argue to the contrary because, as it reads the third sentence of the section, the FRA's failure to act before the deadline deprives it of the ability to make any changes in the rule. But that reading presupposes that the deadline is mandatory; it is not compelled by the language itself.
 
 
 13
 That the deadline is directory finds further support from the fact that "less drastic remedies [are] available for failure to meet [the] statutory deadline." Pierce County, 476 U.S. at 260, 106 S.Ct. at 1839. If it considered itself aggrieved by the FRA's failure to act in a timely fashion, the BRC could have brought an action in the district court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. Sec. 706(1) (1988); see Gottlieb, 41 F.3d at 734 (proper course for party aggrieved by delay that violates statutory deadline is to apply for court order compelling agency action). In the alternative, the BRC could have waited until the FRA had finally acted on its petition and then "supplement[ed] its premature petition with a later protective petition ... as we have repeatedly urged petitioners to do in analogous situations." Western Union Tel. Co. v. FCC, 773 F.2d 375, 380 (D.C.Cir.1985).
 
 
 14
 But the most persuasive evidence of the nature of section 211.31(a) is provided by the agency itself. As we have repeatedly observed, "courts owe 'even greater deference to agency interpretations of agency rules than ... to agency interpretations of ambiguous statutory terms.' " Consolidated Rail Corp. v. ICC, 43 F.3d 1528, 1532 (D.C.Cir.1995) (quoting Capital Network System, Inc. v. FCC, 28 F.3d 201, 206 (D.C.Cir.1994)). In this case, the FRA maintains that the regulation's four-month deadline is directory only; and it notes that this interpretation is consistent with its past practice (citing Bridge Worker Safety Rules, 59 Fed.Reg. 30,879, 30,880 (1994) (petition for reconsideration filed on Aug. 10, 1992, was acted upon five months later, on Jan. 11, 1993)).
 
 
 15
 Because the BRC has failed to provide any convincing reason why we should reject the agency's construction of section 211.31(a), we reject its contention that the FRA's failure to act constituted final agency action. Accordingly, we conclude that its petition for review was "incurably premature."
 
 B. No. 95-1169
 
 16
 Although the BRC's petition for review in No. 95-1169 was filed on March 20, 1995, shortly after the FRA had published the 1995 Response, it makes no mention of that document. Rather, the petition requests that we declare invalid and enjoin the enforcement of those portions of the Final Rule that the BRC had challenged, in its petition for reconsideration, as beyond the FRA's authority.
 
 
 17
 While conceding that petitions for review must be filed within 60 days of final agency action, see 28 U.S.C. Sec. 2344 (1988); Fed.R.App.P. 15(a), the BRC argues that this rule is subject to an exception where an agency has effectively "reopened" a rulemaking proceeding. See, e.g., Edison Elec. Inst. v. EPA, 996 F.2d 326, 331 (D.C.Cir.1993); Ohio v. EPA, 838 F.2d 1325, 1328-29 (D.C.Cir.1988). The BRC asserts that the 1995 Response reopened the Final Rule for further comment and that its petition for review was therefore timely filed.
 
 
 18
 The BRC is correct, of course, that " 'the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection.' " Edison Elec. Inst., 996 F.2d at 331 (quoting Ohio, 838 F.2d at 1328). But it places too great a reliance on a summary, in Public Citizen v. NRC, 901 F.2d 147, 150 (D.C.Cir.1990), of four factors referred to in Ohio that can give rise to an inference that an agency has decided to reopen a previously decided issue. The factor on which the BRC particularly relies arises when, in connection with a proposed change in a rule or policy, an agency "respond[s] to at least one comment aimed at the previously decided issue." Id. But as we pointed out in Public Citizen, in determining whether an agency intended to reopen a rulemaking proceeding, we
 
 
 19
 must look to the entire context of the rulemaking including all relevant proposals and reactions of the agency to determine whether an issue was in fact reopened. If in proposing a rule the agency uses language that can reasonably be read as an invitation to comment on portions the agency does not explicitly propose to change, or if in responding to comments the agency uses language that shows that it did in fact reconsider an issue, a renewed challenge to the underlying rule or policy will be allowed.
 
 
 20
 Id.
 
 
 21
 Nothing in the 1995 Response suggests that the FRA intended to reopen the debate over the propriety of the underlying rule. The discussion of the two amendments announced in the 1995 Response cannot "reasonably be read as an invitation to comment" on other portions of the Final Rule. Nor does the FRA's response to the BRC's comments suggest that it had reconsidered the issues raised by the BRC in its petition for reconsideration, witness its response to the BRC's objections to the Final Rule's expansion of the train and yard crew exclusion to cover utility employees:Our conclusion continues to be that utility employees can function safely without blue signal protection under properly structured Federal regulations and railroad operating rules requiring adequate communication and understanding of the work to be performed.... The agency continues to believe that according a utility employee the same level of protection historically provided to train and yard crews would not risk the employee's safety.
 
 
 22
 60 Fed.Reg. 11,047.
 
 
 23
 In sum, we see nothing in the 1995 Response that can fairly be construed as soliciting renewed comments, other than the FRA's explicit invitation for comments on its newly announced amendment concerning single-member crews. See 60 Fed.Reg. at 11,048 (although the "FRA is not obliged to provide further opportunity to comment," because the issue was only addressed in the preamble to the Final Rule, the "FRA ... invites comment on this amendment before it takes effect") (emphasis added). And we find in that limited invitation, and the reason given for it, further evidence, if any were needed, that in responding to the arguments made by the BRC in its petition for reconsideration, the FRA did not intend to reopen debate on the validity of other parts of the rule. We therefore conclude that because the petition for review in No. 95-1169 was filed more than 60 days following final action on the Rule, we have no jurisdiction to consider it.
 
 III. CONCLUSION
 
 24
 For the foregoing reasons, the BRC's petitions for review are
 
 
 25
 Dismissed.